PITTMAN, Judge.
F.A. “Bubba” Bingham, in his official capacity as the director of the Alabama Department of Public Safety (“the DPS”), and Alabama State Trooper Darrell Seymour (Bingham and Seymour are hereinafter referred to collectively as “the DPS defendants”) petition this court to issue a writ of mandamus directing the Montgomery Circuit Court to dismiss for lack of subject-matter jurisdiction the underlying action filed by Ronald Kidd and Teodosio Arroyo Martinez (“the claimants”) against the DPS defendants.[1] For the reasons set *1019 forth below, we grant the petition and issue the writ.

Factual and Procedural Background

As named plaintiffs in a putative class-action lawsuit, the claimants sought the return of cash that state troopers had seized from them pursuant to § 20-2-93, Ala.Code 1975.[2] The complaint alleged that Seymour had seized $10,000 from Kidd on January 18, 2008, and that an unknown state trooper had seized $20,390 from Martinez on March 31, 2010. The complaint further alleged that, instead of instituting prompt proceedings to forfeit the property to the State as required by § 20-2-93(c) and § 28-4-286, Ala.Code 1975,[3] the DPS had transferred the property to the Drug Enforcement Administration (“the DEA”) to commence federal forfeiture proceedings and that, at the conclusion of those proceedings, the DEA had returned 80 to 90 percent of the forfeited cash to the DPS and had kept the remainder as an administrative fee.
The DPS defendants moved to dismiss the claims against them, pursuant to Rule *1020 12(b)(1), Ala. R. Civ. P., and filed a brief in support of that motion, asserting that the Montgomery Circuit Court lacked subject-matter jurisdiction over the action because, they said, jurisdiction was vested in the federal courts by virtue of the adoptive-forfeiture doctrine, citing Edney v. City of Montgomery, 960 F.Supp. 270 (M.D.Ala.1997) (holding that, pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 881, a federal agent’s adoption of a state’s seizure of currency has the same effect as if the United States had originally seized the currency), and Green v. City of Montgomery, 55 So.3d 256 (Ala.Civ.App.2009) (holding that a state court had jurisdiction over an in rem action seeking return of seized currency because the claimants had filed that action before the currency had been transferred to the DEA and the DEA had adopted the seizure). The claimants filed a response in opposition to the motion to dismiss, along with a supporting brief. On April 1, 2011, the trial court entered an order denying the motion to dismiss. The DPS defendants filed a timely petition for a writ of mandamus on April 21, 2011.

Standard of Review

“Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). “The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.” Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003) (citing Ex parte Flint Constr. Co., 775 So.2d 805 (Ala.2000)).

Discussion

In denying the motion to dismiss, the trial court determined that the adoptive-forfeiture doctrine discussed in Edney, supra, did not apply in this case because there had been no involvement by federal law-enforcement agents in the actual seizure of the claimants’ property. In Edney, DEA agents had instructed municipal police officers to seize cash from the claimant “on behalf of the DEA.” 960 F.Supp. at 271. In this case, the trial court concluded that because the state troopers had seized the claimants’ property solely on the authority of state law, and because DEA agents had had no involvement in or knowledge of the seizures until after they had occurred, state law applied and the federal adoptive-forfeiture doctrine did not apply. That conclusion was erroneous as a matter of law.
As this court explained in Green, supra, the validity of the adoptive-seizure process is not dependent upon the participation of federal authorities in the seizure itself.
“The authority for adoptive seizure, although not explicit, comes from 21 U.S.C. § 881(e)(1)(A), which allows the United States Attorney General, at the conclusion of federal forfeiture proceedings, to return seized property back to the state or local agency ‘which participated directly in the seizure or forfeiture of the property.’ Federal adoption of a seizure has the same effect as if the seizure had originally been made by the United States. See United States v. One Ford Coupe Auto., 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926).”
55 So.3d at 259. In Green, we described how the adoptive-seizure process works:
“The adoptive-seizure process begins when state or local authorities seize property as part of a criminal investiga *1021 tion or arrest. Generally, the state or local officials either make a determination that forfeiture is not possible under state law or conclude that it is advantageous to them to transfer the matter to federal authorities for a federal administrative forfeiture proceeding. See I.R.S. Manual 9.7.2.7.B (July 25, 2007); Asset Forfeiture Law, Practice, and Policy, Asset Forfeiture Office, Criminal Division, United States Department of Justice, Vol. I (1988) at 38 (cited in Johnson v. Johnson, 849 P.2d 1361, 1363 (Alaska 1993)). Once state or local officials have determined that an adoptive seizure is advantageous, they file a request with federal authorities. The appropriate federal agency then decides whether to accept or reject the request. If the adoptive-seizure request is accepted, the property is taken into the custody of federal agents and federal administrative forfeiture proceedings begin. At the successful conclusion of those proceedings, usually 80% of the forfeited property is given back to the state or local agency.”
55 So.3d at 258.
This court held that the state court had jurisdiction over the seized property in Green because the claimants had filed an in rem action for the return of their property before the DEA had adopted the seizure. We noted: “The claimants’ action in state court was an in rem or quasi in rem action, and it invoked state in rem jurisdiction before the federal government attempted to acquire jurisdiction.” 55 So.3d at 265. In the present case, the allegations of the complaint demonstrate that federal authorities had adopted the seizures and had, therefore, acquired in rem jurisdiction over the claimants’ property before the claimants filed an in rem action in state court for the return of their property. “[T]wo courts cannot have concurrent in rem jurisdiction and ... the first court to acquire in rem jurisdiction does so to the exclusion of all other courts.” Green, 55 So.3d at 259 (citing Ex parte Consolidated Graphite Corp., 221 Ala. 394, 397-98, 129 So. 262, 265 (1930)).
Because a federal court had already acquired (and exercised) in rem jurisdiction over the claimants’ property at the time the claimants filed an in rem proceeding in the Montgomery Circuit Court, the circuit court had no jurisdiction in this case. Accordingly, we conclude that the DPS defendants have met the requirements for the issuance of a writ of mandamus. The trial court is, therefore, directed to vacate its order denying the DPS defendants’ motion to dismiss and to enter an order granting that motion.
PETITION GRANTED; WRIT ISSUED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. Based on the materials before this court, it appears that the claimants have also asserted claims against fictitiously named parties, pursuant to Rule 9(h), Ala. R. Civ. P. Moreover, it appears that, in addition to their individual claims, the claimants have asserted claims on *1019 behalf of a class of similarly situated individuals. Finally, it appears that additional plaintiffs have asserted claims against other defendants; however, those claims and parties are not before this court in this mandamus proceeding.

. Section 20-2-93 provides, in pertinent part:
"(a) The following are subject to forfeiture:
[[Image here]]
"(4) All ... moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of any law of this state concerning controlled substances;
[[Image here]]
"(b) Property subject to forfeiture under this chapter may be seized by state, county or municipal law enforcement agencies upon process issued by any court having jurisdiction over the property. Seizure without process may be made if:
"(1) The seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;
"(2) The property subject to seizure has been the subject of a prior judgment in favor of the state in a criminal injunction or forfeiture proceeding based upon this chapter;
"(3) The state, county, or municipal law enforcement agency has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or
"(4) The state, county or municipal law enforcement agency has probable cause to believe that the property was used or is intended to be used in violation of this chapter.
"(c) In the event of seizure pursuant to subsection (b) of this section, proceedings under subsection (d) of this section shall be instituted promptly.
"(d) Property taken or detained under this section shall not be subject to replevin but is deemed to be in the custody of the state, county or municipal law enforcement agency subject only to the orders and judgment of the court having jurisdiction over the forfeiture proceedings. When property is seized under this chapter, the state, county or municipal law enforcement agency may:
"(1) Place the property under seal;
“(2) Remove the property to a place designated by it;
"(3) Require the state, county or municipal law enforcement agency to take custody of the property and remove it to an appropriate location for disposition in accordance with law....
[[Image here]]
“(h) .... Except as specifically provided to the contrary in this section, the procedures for the condemnation and forfeiture of property seized under this section shall be governed by and shall conform to the procedures set out in Sections 28-4-286 through 28-4-290....”

. Section 28-4-286 provides, in pertinent part:
"It shall be the duty of such officer in the county or the Attorney General of the state to institute at once or cause to be instituted condemnation proceedings in the circuit court by filing a complaint in the name of the state against the property seized, describing the same, ... to obtain a judgment enforcing the forfeiture.”